<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MATTHEW STEPANSKI,** | : | **Civil Action No.: 10-2700 (PGS)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **REPORT & RECOMMENDATION** |
| | : | |
| **SUN MICROSYSTEMS, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

<u>ARPERT, U.S.M.J</u>

## I.     INTRODUCTION

This matter having come before the Court on Motion by Plaintiff Matthew Stepanski ("Plaintiff") to compel discovery [dkt. entry no. 41], returnable August 15, 2011.  Defendants Sun Microsystems, Inc. ("Sun"), Oracle Corporation ("Oracle"), and Sun Microsystems, Inc. Director Change of Control Severance Plan (collectively, "Defendants") submitted opposition on August 1, 2011.  Plaintiff filed a reply brief on August 8, 2011.  This matter was referred here for a Report and Recommendation.  The Court conducted oral argument on October 6, 2011.  The Court has fully considered the parties' submissions and arguments and, for the reasons stated below, recommends that Plaintiff's Motion be **GRANTED**.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was hired by Sun on July 28, 1997 and worked in various capacities, ranging from trainee to senior director.  *See* Pl.'s Amended Compl., dkt. entry no. 38 at 1-10.  In April 2009, "Plaintiff was appointed...to Senior Director–North American Professional Services–Sales & Delivery", a position in which Plaintiff claims he "led and managed an organization that numbered,

on average, between 380 and 480 employees and through Sun's Partner Network, ...over 1,500 consultants, all with an annual business plan revenue target that ranged from $290 million to $320 million over the twelve month period prior to" January 2010. *Id*. at 5. Further, Plaintiff claims that in 2009 he "earned total gross compensation of approximately $420,000...". *Id*.; *see also id*. at Ex. A.

In April 2009, Sun and Oracle announced an agreement – which was completed in January 2010 – under which Oracle acquired Sun. *Id*. at 5, 10-11; *see also id*. at Ex. B. At or about that time, Sun "issued and published the Plan...which amended and restated an earlier version of Sun's Director Change in Control Severance Plan". *Id*. at 5, 10-11; *see also id*. at Ex. B.

On January 29, 2010, Oracle offered Plaintiff "the position of Services Sales Senior Director" with "starting compensation at the annual rate of $182,000.00" and eligibility "to participate in the standard compensation plan...[and] automobile program for [that] position". *Id*. at 10-15; *see also id*. at Ex. C. Plaintiff was advised that this offer would remain "open until February 5, 2010". *Id*. at 10-15; *see also id*. at Ex. C. Oracle provided additional documentation to Plaintiff that indicated that Sun employees who accepted its offers of employment would become Oracle employees on/around February 15, 2010, that Sun employees who failed to timely accept Oracle's offer of employment would "be considered to have voluntarily resigned and [would] therefore not be eligible for severance", and that any questions about an offer letter should be directed to "Sun HR, [the employee's] current Sun manager or [the employee's] Oracle hiring manager". *Id*. at 11; *see also id*. at Ex. D.

Plaintiff contends that Oracle's offer of employment "represented a significant reduction in the nature, scope and scale of the duties, position and responsibilities (as well as compensation and

stature) compared to the position that Plaintiff occupied with Sun at the time of the receipt of the offer of employment" and that "[d]espite several requests (both orally and in writing) that Plaintiff made to designated Sun and Oracle management during the week of February 1, 2010", Oracle failed to provide Plaintiff "with specificity or documentation concerning the terms and conditions" of Oracle's offer including the compensation plan. *Id*. at 11-15; *see also id*. at Exhs. E-F. Plaintiff claims that "it was not until late May 2010...that Oracle eventually published or distributed any standard compensation plan for former Sun Directors" and that it was not until May 2010 that Oracle "paid a bonus or incentive compensation to former Sun Directors who elected to accept Oracle's offers of employment". *Id*. at 14-15. Based upon the foregoing, Plaintiff claims that Oracle's offer of employment "required Plaintiff to accept certain adverse conditions of employment...including post-employment restrictive covenants...which...were not conditions of his employment with Sun". *Id*. at 15; *see also id*. at Exhs. G-H. Plaintiff claims that his supervisor, Bruce Douglas ("Douglas") confirmed that Oracle's offer of employment "represented a significantly reduced role compared to the one Plaintiff held at Sun and...[therefore] represented good reason for Plaintiff to terminate his employment under the provisions of the Plan". *Id*. at 15; *see also id*. at Exhs. G-H. In short, Plaintiff maintains that he had "good reason to resign and to initiate his claim for severance benefits under the Plan".[1] *Id*. at 15; *see also id*. at Exhs. G-H.

---

[1]Section 2.1(k) of the Plan defines "good reason" as follows: "the occurrence of one or more of the following without a Participant's express written consent (i) a significant reduction of the Participant's duties, position or responsibilities, or the Participant's removal from such position and responsibilities, unless the Participant is offered a comparable position (*i.e.*, a position of equal or greater organizational level, duties, authority, compensation, title and status); (ii) a reduction by the Company in the Participant's base compensation (base salary and target bonus) as in effect immediately prior to such reduction; (iii) a material reduction by the Company in the kind or level of employee benefits to which the Participant is entitled immediately prior to such reduction with the result that the Participant's overall benefits package is significantly

On February 5, 2010, Plaintiff "sent a written claim for benefits...to the Director, Executive Compensation, [of] Sun...in accordance with the Plan". *Id*. at 15-16; *see also id*. at Exhs. G-H. Federal Express records indicate that Sun received Plaintiff's correspondence on February 8, 2010. *Id*. at 15-16; *see also id*. at Exhs. G-H.  On March 12, 2010, Plaintiff "received an email, sent from the email address 'SunCIC_ww@oracle.com'" which included as an attachment a copy of his written claim for benefits with a date stamp of February 11, 2010 and which requested "[d]etails of why [he] believe[d]...[the] job offer from Oracle represented a significant reduction in [his] duties and responsibilities". *Id*. at 16-17; *see also id*. at Ex. I.  Ms. Timi Baxter ("Baxter"), Oracle's Human Resources Director, Mergers and Acquisitions, acknowledged sending the above-referenced email in her role as Plan Administrator. *Id*. at 17; *see also* Def.'s Supplemental Decl. of Baxter, dkt. entry no. 24-1.  On April 8, 2010, upon returning from paternity leave, Plaintiff "submitted [a] substantive response to Baxter's March 12, 2010 request by email with an accompanying two-page letter and a three-page chart...which juxtaposed his position at Sun and the position he was offered by Oracle and [attempted to demonstrate] the significant reduction in position, duties and responsibilities associated with the Oracle offer of employment". *Id*. at 17-18; *see also id*. at Ex. J.  United States Postal Service certified mail records indicate that Sun received Plaintiff's correspondence on April 12, 2010. *Id*. at 17-18; *see also id*. at Ex. J.

Plaintiff maintains that because his claim was "received by Sun's Director of Executive

---

reduced; (iv) the Participant is requested to relocate (except for office relocation that would not increase the Participant's one way commute by more than 50 miles); or (v) the failure of the Company to obtain the assumption of the Plan pursuant to Section VII". *See* dkt. entry no. 38-1.

Compensation...on February 8, 2010", according to Section 9.2(b)[2] of the Plan, Defendants' response was due by May 9, 2010. *Id*. at 18; *see also id*. at Ex. K. Plaintiff further maintains that pursuant to Section 9.2(c)[3] of the Plan, "a denial of a claim shall set forth the specific reason for the denial, reference to the specific Plan provisions upon which the denial is based, a description of any additional material or information necessary to perfect the request, an explanation of why such information is required, and an explanation of the Plan's appeal procedures and the time limits applicable to such procedures". *Id*. Based upon Plaintiff's contention that "Defendants' written denial did not conform to the requirements of Section 9.2(c) of the Plan", due to its lack of detail and based upon Plaintiff's contention that "Defendants' written denial...was not delivered...within the timeframe required by Section 9.2(b) of the Plan", as it was sent via email on May 13, 2010, Plaintiff

---

[2]Section 9.2(b) of the Plan states: "A Participant or Beneficiary may make a written request for review of any matter concerning his or her benefits under this Plan. ...The Administrator shall decide the action to be taken with respect to any such request and may require additional information if necessary to process the request. The Administrator shall review the request and shall issue his or her decision, in writing, no later than 90 days after the date the request is received, unless the circumstances require an extension of time. If such an extension is required, written notice of the extension shall be furnished to the person making the request within the initial 90-day period, and the notice shall state the circumstances requiring the extension and the date by which the Administrator expects to reach a decision on the request. In no event shall the extension exceed a period of 90 days from the end of the initial period". *See* dkt. entry no. 38-1.

[3]Section 9.2(c) of the Plan states: "If the Administrator denies a request in whole or in part, he or she shall provide the person making the request with written notice of the denial within the period specified in Section (b) above. The notice shall set forth the specific reason for the denial, reference to the specific Plan provisions upon which the denial is based, a description of any additional material or information necessary to perfect the request, an explanation of why such information is required, and an explanation of the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review. *See* dkt. entry no. 38-1.

asserts that pursuant to Section 9.2(e)[4] of the Plan he "was not required to exhaust any further administrative remedies and instead was permitted to institute this suit for Plan benefits". *Id*. at 18-19; *see also id*. at Ex. L.

Plaintiff initiated this action against Defendants on May 26, 2010, alleging a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for "failing to provide Plaintiff with the severance and insurance benefits to which he was entitled" under the Director Change of Control Severance Plan ("Plan"). *See* Pl.'s Complaint, dkt. entry no. 1 at 1-2, 17-18, Ex. B. Further, Plaintiff maintains that a *de novo* standard of review should be applied with respect to the Court's review of the Plan Administrator's decision to deny Plaintiff's claim for benefits and for purposes of determining the scope of discovery in this matter. *Id*. at 17. Defendants filed an Answer on July 2, 2010 and asserted affirmative defenses including "fail[ure] to exhaust available administrative remedies" (*see* Def.'s Ans., dkt. entry no. 6 at 14), "just and proper exercise of ERISA fiduciary discretion" (*Id*.), "fail[ure] to mitigate...damages" (*Id*. at 15), and "fiduciary decisions being challenged...are entitled to deference...and are subject to review only for an abuse of discretion" (*Id*. at 16). Defendants filed an Amended Answer on July 21, 2010 asserting, among others, the same affirmative defenses except "failure to mitigate damages". *See* Def.'s Amended Ans., dkt. entry no. 12 at 14-16.

---

[4]Section 9.2(e) of the Plan states: "No legal or equitable action for benefits under the Plan shall be brought unless and until the claimant has submitted a written claim for benefits in accordance with Section 9.2(b) above, has been notified that the claim is denied in accordance with Section 9.2(c) above, has filed a written request for a review fo the claim in accordance with Section 9.2(d) above, and has been notified in writing that the Leadership Development and Compensation Committee ("LDCC") has affirmed the denial of the claim in accordance with Section 9.2(d) above; provided, however, that an action for benefits may be brought after the Administrator or the LDCC has failed to act on the claim within the time prescribed in Section 9.2(b) and Section 9.2(d), respectively". *See* dkt. entry no. 38-1.

On July 9, 2010, Plaintiff filed a motion for partial summary judgment seeking a declaration that he was excused from exhausting the administrative remedies available under the Plan and striking Defendants' Second, Fourth, Seventh and Fourteenth Affirmative Defenses. *See* dkt. entry no. 10; *see also* Pl.'s Amended Compl. at 22.   In addition, on July 9, 2010 "Plaintiff filed a[n]...internal appeal with the Leadership Development and Compensation Committee ("LDCC")" in order "to preserve his ability to pursue his claim through the internal appeal process". *See* Pl.'s Amended Compl. at 22.   At the same time, he requested "copies of all documents and information relied upon by the Plan Administrator in denying [his] claim" pursuant to Section 9.2(d)(i)[5] of the Plan. *Id.* On August 2, 2010, Defendants filed a cross-motion for summary judgment seeking an Order dismissing Plaintiff's Complaint for failure to exhaust administrative remedies and, alternatively, a ruling that judicial deference be accorded to both the Plan Administrator's denial and the LDCC's adjudication of Plaintiff's appeal. *See* dkt. entry no. 14.  On January 18, 2011, United States District Judge Joel A. Pisano concluded that it was "premature to decide whether the administrative process would be futile because neither party [had] allowed the administrative process a chance [to] take place" and issued an Order denying Plaintiff's motion for partial summary judgment as well as Defendants' cross-motion for summary judgment without prejudice. *See* dkt. entry no. 31.  Judge Pisano directed the parties to "cooperate to resume or newly commence the

_____

[5]Section 9.2(d)(i) of the Plan states: "A person whose request has been denied in whole or in part (or such person's authorized representative) may file an appeal of the decision in writing with the LDCC within 60 days of receipt of the notification of denial. ...The LDCC, for good cause shown, may extend the period during which the appeal may be filed for another 60 days. The appellant and/or his or her authorized representative shall be permitted to submit written comments, documents, records and other information relating to the claim for benefits.  Upon request and free of charge, the applicant should be provided reasonable access to and copies of, all documents, records or other information relevant to the appellant's claim". *See* dkt. entry no. 38-1.

administrative process" and to "advise the Court when the administrative claims process and any administrative appeals...[were] completed". *Id*. at 2-3.

On January 20, 2011, Plaintiff "informed Defendants that he was prepared to continue with his internal appeal..., which he would supplement or amend after receipt of Defendants' responses" to his outstanding document and information requests. *See* Pl.'s Amend. Compl. at 23; *see also id*. at Ex. Q.   Pursuant to Plan Section 9.2(d)(i), 29 C.F.R. § 2560.503-1(h)(2)(iii)[6], 29 C.F.R. § 2560.503-1(m)(8)[7], *Fishman v. Zurich American Ins. Co.*, 359 F. Supp. 2d 1036, 1051 (N.D. Ill. 2008), *KAO v. AETNA Life Ins. Co.*, 647 F. Supp. 2d 397, 417 n.26 (D.N.J. 2009), and *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007), Defendants state, they "agreed to produce those documents" which they considered "relevant under the regulatory definition", provided Plaintiff with seven (7) calendar days "to submit any additional information supporting his claim", and advised Plaintiff that the LDCC would "reach its decision within 30 days of receiving written confirmation from Plaintiff that his submissions...[were] complete". *Id*. at 23-24; *see also*

---

[6]29 C.F.R. § 2560.503-1(h)(2) states: "Full and fair review.  Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures...(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section; ...".  *See also* Pl.'s Amend. Compl., Ex. R.

[7]29 C.F.R. § 2560.503-1(m)(8) states: "A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record, or other information (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (iii) demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; ...".  *See also* Pl.'s Amend. Compl., Ex. R

*id*. at Ex. R.  Plaintiff maintains that Defendants "objected to all but five of Plaintiff's twenty-nine document and information requests...and refused to provide any documents...[or] information responsive to Plaintiff's other twenty-four requests".  *Id*. at 24; *see also id*. at Exhs. R-S.  "The twenty-four pages of documents produced by Defendants", which Defendants "represented were the only documents in their possession that fit into" the categories specified in 29 C.F.R. § 2560.503-1(m)(8), "consisted of one email chain that...commenced on March 12, 2010 and concluded on May 5, 2010, including emails by and between Michael Farley, Anna Woods, and Baxter" and "an incomplete email from Larry Abramson ("Abramson")".  *Id*.; *see also id*. at Exhs. R-S.  Plaintiff maintains that Defendants' responses "indicated that the Plan Administrator had not considered numerous documents and sources of information readily available to her which...would have provided compelling evidence that Plaintiff's claim should have been approved".  *Id*.

On January 31, 2011, "Plaintiff requested that Defendants expressly confirm that the Plan Administrator had not considered any documents consisting, referring or relating to: (1) Plaintiff's position[,] duties[,] and responsibilities at Sun prior to the January 29, 2010 Offer of Employment; (2) the January 29, 2010 Offer of Employment as well as any and all documents describing the position, duties and responsibilities offered to Plaintiff; (3) Plaintiff's February 5, 2010 claim letter; (4) Plaintiff's April 8, 2010 response to Defendants' request for information; (5) any communications with Plaintiff's direct supervisor (Douglas) regarding the Offer of Employment...and whether it triggered Plaintiff's entitlement to his severance benefit under the Plan; or (6) any review of Plaintiff's compensation at Sun or his proposed compensation at Oracle".  *Id*. at 25; *see also id*. at Ex. S.  On February 7, 2011 Defendants produced the Declaration of Baxter which Plaintiff contends confirms that "the only steps she took to investigate and issue a ruling on

Plaintiff's claim consisted of: (1) asking Plaintiff to provide additional information; (2) asking Anna

Woods, a Human Resources employee, to contact Abramson to obtain his opinion about Plaintiff's

claim while also instructing Ms. Woods not to seek an assessment of the merits of Plaintiff's claim

from Douglas; (3) reviewing information provided by Sun HR and Oracle HR regarding Plaintiff's

base compensation and car allowance; (4) reviewing Plaintiff's job title and proposed job title; and

(5) reviewing the FAQs document regarding the Change of Control". *Id*. at 25-26; *see also id*. at Ex.

T.  In addition, in response to a "follow up inquiry from Plaintiff, on February 15, 2011...Defendants

produced a two-page screen shot entitled Oracle Mapping from a confidential Oracle internal

database" which Plaintiff claims "purports to show that pursuant to the Offer of Employment[,]

Plaintiff would have received an annual salary of $182,000 and a monthly car allowance of $600 per

month".  *Id*. at 26.  Plaintiff maintains that "Defendants represented the foregoing was the only

evidence that the Plan Administrator reviewed with respect to Plaintiff's compensation", that the

"Plan Administrator...never stated that she carefully read Oracle's one-page Offer of Employment

Letter to Plaintiff – the only document Plaintiff received and had available for evaluating and

comparing both the job responsibilities and compensation components of the offered job" and,

therefore, that "the Plan Administrator's assertion in her February 7, 2011 Declaration [was]

misleading and inaccurate because...the Offer of Employment does not state base compensation, base

salary or target bonus for the new Oracle position".  *Id*.

        "On February 23, 2011, Plaintiff filed a supplement to his July 9, 2010 Internal Appeal with

the LDCC consisting of a ten-page letter", "436 pages of documents in support of his claim", and

a "chart that delineates the numerous respects in which the position [he] was offered at Oracle

represented a significant reduction compared to the position [he] held at Sun".  *Id*. at 27-29; *see also*

*id*. at Ex. U.  On March 16, 2011, "Defendants informed Plaintiff that they had also supplemented the Internal Appeal record before the LDCC", that "they planned to further supplement the record with declarations from certain company employees", and that "Plaintiff would have an opportunity to respond to any declarations and information that Defendants provided to the LDCC".  *Id*. at 30; *see also id*. at Ex. V.  "On March 21, March 24, and March 29, 2011, Defendants supplemented the Internal Appeal with Declarations of Baxter, Abramson and Saleem Haque ("Haque")" – declarations which Plaintiff maintains contain "numerous material misstatements"  *Id*. at 30-31; *see also id*. at Exhs. W-X.  On April 11, 2011, "Plaintiff filed a further supplement to the Internal Appeal" which included what Plaintiff contends is a "detailed 25-page declaration in which he responded to and rebutted the Baxter, Abramson and Haque Declarations" and submitted "approximately 75 pages of additional documents that support Plaintiff's claim".  *Id*.; *see also id*. at Exhs. W-X.  On April 18, 2011, "Defendants confirmed receipt of Plaintiff's supplement" and "advised that the LDCC would issue a decision...on May 17, 2011", but failed to notify Plaintiff that "Defendants intended to further supplement the...record" and "did [not] provide Plaintiff with [the] May 10, 2011 Declaration of Baxter until May 17, 2011" – after Plaintiff's appeal was decided and denied.  *Id*. at 31-32; *see also id*. at Exhs. Y & AA.

With respect to the denial of Plaintiff's appeal, Plaintiff notes that "[u]nder Sun's ownership, the...LDCC...was compromised of three independent non-executive members of the Sun Board of Directors".  *Id*. at 31; *see also id*. at Ex. Z.  Plaintiff maintains that "[w]hen Oracle acquired Sun, the composition of the LDCC was changed" and "the three independent non-executive board members...[were] replaced solely by Ms. Dorian Daley ("Daley") who serves as Senior Vice President, General Counsel and Secretary of Oracle and is also President and Chief Executive Officer

11

of Sun (post Oracle's acquisition)".  *Id*. at 32.  "The LDCC's disposition stated that on two

occasions, Daley...met to discuss Plaintiff's...appeal with Baxter[,] the Plan Administrator or

designee, Sarah Wilson[,] Managing Counsel for Oracle, and James P. Baker[,] ("Baker") outside

counsel for Oracle and the attorney...[of record for] Defendants with respect to [this] lawsuit since

May 2010".  *Id*.; *see also id*. at Ex. AA.  "The LDCC's disposition also advised that the LDCC had

adopted the Plan Administrator's Summary, which was...submitted to the LDCC on May 10, 2011,

and which was...drafted by defense counsel...Baker...[rather than] the Plan Administrator".  *Id*.; *see

also id*. at Exhs. AA-BB.  Plaintiff contends that "Baker's summary contains numerous

misstatements, misrepresentations..., and omits material facts", "reflect[s] an extraordinary bias in

attempting to justify Defendants' 'cherry-picked' and extraordinarily limited investigation of

Plaintiff's claim", "accepts – without reservation – as fact...every statement made by Baxter and

Abramson irrespective...of any supporting corroborating documentation", and "completely dismisses

the...rebuttal submitted by Plaintiff...along with significant support and corroborating

documentation".  *Id*. at 32-40.  In addition, Plaintiff maintains that despite the representation that he

would be "afforded the opportunity to respond to any evidence submitted by Defendants to the

LDCC", the May 10, 2011 Declaration of Baxter was attached to the Baker summary but was never

provided to Plaintiff.  *Id*. at 33.  In sum, Plaintiff claims the appeal process was conducted with bias

by individuals with material conflicts of interest and that same demonstrates bad faith and a breach

of fiduciary duty.  *Id*. at 40-43.  Oppositely, despite Plaintiff's contentions, Defendants maintain that

Plaintiff's "base compensation at Oracle was not reduced", that Plaintiff "was...not being demoted

at the time he terminated his employment", and that Abramson "was the appropriate person at Oracle

to analyze whether [Plaintiff's] job constituted a demotion".  *See* Def.'s Opp'n Br., dkt. entry no. 43

at 3-4.

On May 18, 2011, counsel advised the Court that Plaintiff's internal appeal of the Plan Administrator's denial of his claim had been decided and that the denial was affirmed by the LDCC. Thereafter, the Court issued a Scheduling Order granting Plaintiff leave to file an Amended Complaint and Defendants' leave to file an Answer to the Amended Complaint.  *See* dkt. entry no. 37.  Anticipating the instant dispute, the Court also set a schedule for Plaintiff to serve written discovery requests, for Defendants to object thereto, and for Plaintiff to file a motion to compel discovery.  *Id*.

On July 22, 2011, Plaintiff filed the instant Motion (*see* dkt. entry no. 41) seeking an Order confirming that a *de novo* standard of review is applicable in this matter such that no extraordinary limitation on the scope of discovery is appropriate, compelling Defendants to provide substantive responses to interrogatories, compelling Defendants to produce all non-privileged documents requested, compelling Defendants to produce a privilege log as to any materials withheld, compelling Defendants to produce witnesses for depositions (*see* Pl.'s Proposed Form of Order, dkt. entry no. 45-2), and awarding Plaintiff attorneys' fees and costs incurred in connection with this Motion (*see* Pl.'s Br., dkt. entry no. 41-1 at 20).  In support of his contention, Plaintiff relies primarily on Section 9.1 of the Plan which states:

> Prior to a Change In Control, the Employer shall have discretionary authority to construe and interpret the terms of the Plan, to determine eligibility and to make all other determinations under the Plan.  On or after the date a [sic] Change of Control, the Employer shall not have discretionary authority to construe and interpret the Plan, and any decisions of the Employer with respect to the plan during such period shall be subject to *de novo* review if and when such decisions are reviewed by a court or in arbitration.

*See* dkt. entry no. 38-1.  Separately, Plaintiff has maintained his right to re-file a motion for partial summary judgment on the grounds previously asserted before Judge Pisano; specifically, that based on Defendants' failure to timely respond to Plaintiff's initial demand for benefits, a *de novo* standard of review applies regardless of the Plan's provisions.

Defendants argue that "[t]he discovery propounded by [Plaintiff] is unnecessary, harassing and duplicative" because "a voluminous administrative record already exists" and because Plaintiff "seeks a large volume of documents that are not remotely relevant to his claim". *Id*. at 5-7.  Even if the Court rules that "the *de novo* standard of review applies", Defendants contend, "the question...is whether the administrator made a correct decision" and that the Court's review "is limited to the record before the administrator" when deciding whether "the administrator properly interpreted the Plan and whether...[Plaintiff] was entitled to benefits under the Plan". *Id*. at 7-8. Accordingly, Defendants argue that "[s]eeking discovery about statements from any person relating to [Plaintiff's] claim or appeal...outside of the administrative record", seeking the "substance and details of any communication between the Plan and any person not a party to this matter that is relevant to this action", and seeking details about the "corporate governing structure...including the identification of all parents, subsidiaries and associated business entities as well as corporate officers, directors and shareholders, [and] the nature of its business and the source of funding" is irrelevant to the Court's consideration of Plaintiff's claim. *Id*. at 8.  Similarly, Defendants argue that Plaintiff's document requests "seek information beyond the administrative record" that is "uniformly irrelevant, unnecessary and duplicative".  *Id*. at 8-10.  Finally, with respect to the depositions noticed by Plaintiff, Defendants argue that "additional discovery is sharply constrained in an ERISA case involving a denied claim for benefits" and that Plaintiff's "deposition notices do not focus on any

14

alleged conflict of interest" and seek "generic information...as if the administrative record does not

exist". *Id*. at 10.  Defendants maintain that Plaintiff's "failure to address each specific objection with

respect to each specific [discovery] request is fatal to [Plaintiff's] motion to compel". *Id*. at 10-11.

The Court notes that Plaintiff's discovery requests, and Defendants' responses thereto, are

set forth in the Certification of Cora E. MacLean ("MacLean").  *See* Pl.'s Cert. of MacLean, dkt.

entry no. 41-2 at Exhs. A, C.

### A.  Plaintiff's Arguments in Support of the Motion to Compel

#### 1.  Plaintiff is entitled to discovery regarding all relevant matters.

Citing FED. R. CIV. P. 26(b)(1), *Westchester Fire Ins. Co. V. Houshold Int'l., Inc.*, 2006 U.S.

App. LEXIS 2375, at *11 (3d Cir. 2006), and *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999),

Plaintiff maintains that the Third Circuit "employs a liberal discovery standard" whereby "parties

may obtain discovery regarding any matter...that is relevant to the claim or defense of any party" so

long as "the discovery appears reasonably calculated to lead to the discovery of admissible

evidence".  *See* Pl.'s Br. at 10.  Citing *Rega v. Beard*, 2010 WL 2404420, at *1 (W.D. Pa. 2010),

*Hickman v. Taylor*, 329 U.S. 495, 501 (1947), and *Stabilus v. Haynsowrth, Baldwin, Johnson &*

*Greaves, P.A.*, 144 F.R.D. 258, 265-66 (E.D. Pa. 1992), Plaintiff contends that "[g]enerally...courts

afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest

possible knowledge of the issues and facts before trial" such that "when there is no doubt about

relevance, a court should tend toward permitting discovery".  *Id*.  Citing FED. R. CIV. P. 37, *Option*

*One Mortgage Corp. v. Fitzgerald*, 2009 WL 648986, at *2 (M.D. Pa. 2009), *Startzell v. City of*

*Philadelphia*, 2006 WL 2945226, at *4 (E.D. Pa. 2006), and *Josephs v. Harris Corp.*, 677 F.2d 985,

992 (3d Cir. 1982), argues that "[t]he party seeking...[an] order to compel must demonstrate the

relevance of the information sought" and, if met, "[t]he burden...shifts to the opposing party...who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper".  *Id.* at 11.   Here, Plaintiff maintains that "Defendants' reliance upon the wrong standard of review of Plaintiff's claim...and conclusory, repetitive and erroneous relevance and privilege objections...simply [does] not satisfy their burden". *Id.*  Citing FED. R. CIV. P. 26(b)(1), *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), and *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006), Plaintiff argues that "for good cause...the court may order discovery of any matter relevant to the subject matter involved in the action" and maintains that his contentions establish "good cause".  *Id.* at 11-12.

> **2.      The terms of the Plan provide that the Court must apply a *de novo* standard of review to the decision to deny Plaintiff's claim.**

Citing *Viera v. Life Ins. Co. of North America*, 642 F.3d 407, 413 (3d Cir. 2011), Plaintiff notes that the Third Circuit "recently reaffirmed the method for determining the standard of review in ERISA cases" as follows:

> The Supreme Court has held that a denial of benefits challenged under ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. ...If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, we review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard. ...Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan.

*Id.* at 12; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d

16

230, 233 (3d Cir. 2009); *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176,

1180 (3d Cir. 1991). Therefore, Plaintiff argues that "absent language in the Plan that confers

discretion upon the Plan Administrator, decisions made under the Plan are subject to...*de novo*

review by the Court". *Id*. Citing *Ott v. Litton Industries, Inc.*, 2005 WL 1215958, at *5 (M.D. Pa.

2005), Plaintiff contends that in order "[t]o determine the proper standard of review, [analysis] must

begin with the language of the Plan". *Id*. at 13. Here, Plaintiff notes that "Section 9.1 of the

governing...Plan" states:

> Discretionary Authority. Prior to a Change of Control, the Employer
> shall have discretionary authority to construe and interpret the terms
> of the Plan, to determine eligibility and to make all other
> determination under the Plan. On or after the date a Change of
> Control, the Employer shall not have discretionary authority to
> construe and interpret the Plan, and any decisions of the Employer
> with respect to the Plan during such period shall be subject to *de novo*
> review if and when such decisions are reviewed by a court or in
> arbitration.

*Id*. Plaintiff argues that, because "Defendants admit that a Change of Control occurred on January

27, 2010...when Oracle completed its acquisition of Sun", and because "decisions made under an

ERISA plan are subject to *de novo* review unless the Plan provides otherwise, and because the

express terms of the Plan in fact confirm that...*de novo* review is applicable to the post-Change in

Control decision to deny Plaintiff's claim for Plan benefits, the Court's review of Plaintiff's

Complaint and Defendants' decision to deny his [c]laim is subject to...*de novo* review". *Id*.

>   **3.   Because the Court must apply a *de novo* standard of review, the
>   administrative record is accorded no deference and Plaintiff is entitled
>   to discovery beyond the record.**

Citing *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002)

and *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990), Plaintiff argues that "[w]here...the

Court's review of the denial of Plan benefits is subject to...*de novo*...review, the role of the Court is to determine whether the administrator made a correct decision" by "review[ing] the record and determin[ing] whether the insured was entitled to benefits under the plan", according "no deference or presumption of correctness" to the "administrator's decision". *Id*. at 14.  Citing *Viera*, 642 F.3d at 418, *Hoover*, 290 F.3d at 809, *Luby*, 944 F.2d at 1184-85, *Nave v. Fortis Benefits Ins. Co.*, 199 WL 672659, at *6 (E.D. Pa. 1999), *Sussex Auto Ctr., Inc. v. Optimum Choice, Inc.*, 2001 WL 822329, at *2 (D. Del. 2001), and *Smith v. Continental Cas. Co.*, 2003 WL 105510, at *3 (M.D. Pa. 2003), Plaintiff maintains that "it is a long-standing principle in the Third Circuit...that courts operating under a *de novo* standard of review are not limited to the administrative record" and "have acknowledged that new evidence is admissible when applying the *de novo* standard of review". *Id*. at 14-15.  As such, Plaintiff argues that "Defendants' chief objection to Plaintiff's discovery" – "namely[,] that regardless of the standard of review...the Court is limited to the administrative record" – "is flatly refuted by applicable precedent".  Citing *Bair v. Life Ins. Co. of N. Am.*, 263 F.R.D. 219, 224 (E.D. Pa. 2009) and *Security Mutual life Insurance Co. of New York v. Joseph*, 2007 U.S. Dist. LEXIS 47664, at *22-23 (E.D. Pa. 2007), Plaintiff contends that he is "entitled to discovery of relevant documents and information relevant to the biases, conflicts of interest and breaches of fiduciary duty by Defendants" and that "Defendants should be compelled to produce the discovery sought in Plaintiff's requests".  *Id*. at 15-16.

### 4.    Defendants' other objections are inapplicable.

Beyond Defendants' primary objections "related to the standard of review and general availability of discovery in an ERISA case", Plaintiff maintains that "Defendants also asserted invalid objections to many of Plaintiff's individual requests".  *Id*. at 16.  By way of example, Plaintiff

18

notes that he "requested copies of all documents that the Plan contends were generated, reviewed and relied upon in denying Plaintiff's" claim and appeal and that Defendants "objected...and refused to produce any documents despite the fact that during the...appeal process...[they] repeatedly advised Plaintiff that he would be provided with copies of and given an opportunity to respond to any and all documents submitted...to the LDCC". *Id*. at 16-17.  Plaintiff notes that he is "particularly troubled by Defendants' refusal to respond to this [r]equest given that when Plaintiff received the LDCC's denial of his...appeal on May 17, 2011, included in the 'record' was a May 10, 2011 Declaration of Baxter...which Defendants failed to provide to Plaintiff in advance of the LDCC's decision". *Id*. at 17.  Thus, Plaintiff argues that inasmuch as "at least one document of substance was submitted to and considered by the LDCC during the...appeal process without Plaintiff's knowledge, Plaintiff's request for all documents reviewed and considered by Defendants in relation to his [c]laim and...appeal is patently reasonable and tailored to elicit relevant documents in accordance with FED. R. CIV. P. 26". *Id*.

Further, Plaintiff maintains that "Defendants' blanket assertion of the attorney-client privilege is also unavailing with respect to Plaintiff's discovery requests" based upon the fact that "Defendants have already conceded that the 'administrative record' [which was] produced to Plaintiff contains documents that Defendants marked as 'Attorney-Client Privileged', including the Baker Summary, which is one of the essential documents at issue in this case". *Id*.  Citing *Pennsylvania Dept. of Public Welfare v. U.S.*, 2006 WL 3792628, at *21 (W.D. Pa. 2006), Plaintiff contends that "the simple fact that Defendants may have marked documents as privileged does not mean that the privilege actually applies or that Defendants should not be compelled to produce such documents". *Id*. at 17-18.  Rather, "to the extent...Defendants contend that they possess documents

or information that are subject to the attorney-client or work product privilege", Plaintiff asserts that pursuant to FED. R. CIV. P. 26(b)(5), Defendants "are obligated...to provide...a privilege log...specifically identify[ing] each document or communication and the type of privilege or protection being asserted". *Id.* at 18-19. Here, Plaintiff notes that Defendants "have never provided...any privilege log" and "should not be permitted to refuse to produce requested documents and information not identified on a privilege log". *Id.* at 19.

Finally, Plaintiff maintains that "Defendants have no valid basis, under the attorney-client privilege or otherwise[,] to object to Plaintiff's notice to depose Defendants' counsel Baker". *Id.* Citing *Aamco Transmissions, Inc. v. Baker*, 2008 WL 509220, at *3 (E.D. Pa. 2008) and *Kaiser v. Mutual Life Ins. Co. of New York*, 161 F.R.D. 378, 382 (S.D. Ind. 1994), Plaintiff contends that "Baker has personal knowledge and will be a key fact witness regarding the LDCC's consideration of Plaintiff's...appeal" because "he not only drafted the Plan Administrator's Summary, ...he was [also] present at both meetings when Daley purportedly considered the merits of Plaintiff's...appeal". *Id.* at 19-20.

### B.   Defendants' Arguments in Opposition to the Motion

#### 1.   The LDCC's decision denying Plaintiff's claim is subject to review only for an abuse of discretion.

Defendants note that Plaintiff "concedes that the abuse of discretion standard of review applies where the relevant plan provision grants the reviewing fiduciary discretionary authority to make eligibility or plan benefit determinations". *Id.* at 11. However, Plaintiff "only quotes the Plan language he believes is favorable to his views concerning the standard of review inquiry" which is set forth "in Section 9.1...[with respect] to Employer decisions after a change in control". *Id.* Citing

20

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) and *Restatement (Second) of Trusts* § 4, comment d (1959), Defendants maintain that the "terms...created by written instruments are determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence...[demonstrating] intention" and point out that Plaintiff ignores "Plan Section 9.2(d)(v)[, which] address[es] the broad discretion granted to the LDCC to make final, binding benefit determinations". *Id*. Specifically, Defendants contend that the "Plan language at Section 9.2(d)(ii) shows that the LDCC has the discretion to consider new evidence and the power to consider Plan provisions not cited in the original claim denial":

> 9.2(d)(ii)  The LDCC's review shall take into account all comments, documents, records and other information submitted by the appellant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.  The LDCC shall not be restricted in his or her review to those provisions of the Plan cited in the original denial of the claim...
> ...
> 9.2(d)(v)  The decision of the LDCC on the appeal shall be final, conclusive and binding upon all persons and shall be given the maximum possible deference allowed by law.

*Id*. at 11-12.

Citing *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 417 (3d Cir. 2011) and *Diaz v. Prudential Ins. Co.*, 424 F.3d 635, 639 (7th Cir. 2005), Defendants acknowledge that in order "[t]o be insulated from *de novo* review, a plan must communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely". *Id*. at 12.  "Plan Section 9.2(d)(ii) does just that", Defendants maintain, by "provid[ing] the LDCC with a wide degree of discretion" to "take into account all comments, documents, records and other information

submitted by the appellant without regard to whether such information was previously submitted"

and by providing the LDCC with "the discretionary authority to construe...[and interpret] the Plan's

terms". *Id.* Further, "Plan Section 9.2(d)(v)...gives the abuse of discretion fiat to the decisions of

the LDCC" based upon the fact "that LDCC decisions are to have final, conclusive and binding

effect upon all persons and shall be given the maximum possible deference allowed by law". *Id.* at

12-13. Citing *Fotta v. Trustees of the United Mine Workers of Am.*, 319 F.3d 612, 617 (3d Cir.

2003), *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir. 1994), and *Abatie v. Alta Health & Life

Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006), Defendants contend that the language set forth in the

Plan demonstrates that "the LDCC has been given the discretion to rule on disputes of fact and

then...interpret the Plan's provisions in rendering its decision" and that as such, the LDCC's

decisions may only be considered "wrongful...if they are arbitrary and capricious". *Id.* at 13.

Citing *Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d 123, 126 (3d Cir. 1996) and

*Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir. 1989), Defendants note that

"[w]hen interpreting ERISA plans, courts must look to the straightforward language of the plan and

give it its natural meaning". *Id.* Citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1512 (10th Cir.

1996) and *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan*, 64 F.3d

1389, 1393 (9th Cir. 1995), Defendants further note that "courts also look to the canon of textual

construction *expressio unius est exclusio alterius*...for interpretative guidance when necessary". *Id.*

at 13-14. Defendants argue that the based "on the plain language of the Plan, it is clear that it does

not infer that '*de novo*' review applies to the LDCC's decisions" and that it does "say the LDCC's

decisions are...entitled to deference". *Id.* at 14. Citing *Luby v. Teamsters Health, Welfare & Pension

Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991), Defendants note that "[i]n determining whether

discretion has been granted to...[a] fiduciary, there are no magic words" and the phrase "discretion is granted need not be expressly stated so long as the plan on its face clearly grants such discretion". *Id*. Defendants, referring the Court to *Walker v. Smithkline Beecham & Chemco*, 1997 WL 137331, at *6-7 (E.D. Pa. 1997), *aff'd*, 133 F.3d 912 (3d Cir. 1997) and *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1141 (3d Cir. 1993), argue that "District Courts have relied on much less clear grants of discretion in applying a deferential standard of review". *Id*. "In this case, *de novo* review cannot be applied without disregarding the Plan's express grant of discretion to the LDCC to consider new facts and new Plan provisions on appeal" and "would also directly contradict the express grant in the Plan" that LDCC decisions "shall be given" the "maximum deference allowed by law". *Id*.

Defendants acknowledge that "[b]efore Oracle's acquisition of Sun, ...[Sun] had discretionary authority to construe and interpret the terms of the Plan, to determine eligibility and to make all other determinations under the Plan". *Id*. at 15. Defendants also acknowledge that after the acquisition the "discretionary authority to construe and interpret the Plan [by Oracle was] revoked and any decisions made by...[Oracle]...regarding the Plan shall be subject to *de novo* review if ever disputed before a court or arbitrator". *Id*. However, Defendants argue, the "LDCC is not the Employer" and the "LDCC is not Oracle". *Id*. Rather, the LDCC "is an appeals review committee appointed by Oracle to act as a plan decisionmaker" that is "separate and distinct from the Employer and is a named Plan fiduciary". *Id*. As a Plan fiduciary, Defendants maintain that the "LDCC has...discretion...[and] power to construe the terms of the Plan and the power to grant or deny claims on appeal". *Id*. Noting that "[a] fiduciary is allowed to be both an employer and a fiduciary" and citing *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000), Defendants contend that "ERISA requires that the fiduciary with two hats wear only one at a time...and wear the fiduciary hat when making

23

fiduciary decisions". *Id*. Therefore, "even if the LDCC is appointed by Oracle, the LDCC acts as plan fiduciary...[rather than] as the Employer when deciding any Plan appeal". *Id*. "[W]hile the Employer's decisions after a change in control are subject to '*de novo*' review, the LDCC's decisions...are to be given the maximum possible deference allowed by law" or, "in other words, the abuse of discretion standard". *Id*. Defendants argue that although "Oracle's position on whether [Plaintiff] had good reason to quit [is] not to be deferred to by the Court, the same is not true concerning the decisions made by the Plan Administrator and the LDCC". *Id*. Citing *Luby*, 944 F.2d at 1181, Defendants contend that "[h]ad Sun wanted *de novo* review to apply to benefit claim decisions made by the LDCC after a change in control, it knew how to say so and would have expressly done so". *Id*. Thus, "[t]he decisions of the LDCC are subject to the abuse of discretion standard because the Plan expressly and unambiguously gives the LDCC the power to consider new evidence, the discretion to consider other Plan provisions not raised or cited, and states that decisions of the LDCC shall be given the maximum possible deference allowed by law". *Id*. at 15-16.

> **2.      Under an abuse of discretion review, Plaintiff is not entitled to general discovery.**

Citing *Bair v. Life Ins. Co. of Am.*, 263 F.R.D. 219, 224 (E.D. Pa. 2009), Defendants maintain that "[t]he general rule is that a court reviewing an ERISA benefits decision is limited to the administrative record". *Id*. at 16. Despite the fact that Plaintiff "appears to concede that under the abuse of discretion standard, he is not entitled to discovery outside of the administrative record" and although "he is on clear notice that Defendants' position is that [his] claim is subject to review only for an abuse of discretion", Defendants contend that Plaintiff "has not put forward any argument that discovery would be proper under that standard". *Id*. Citing *Howley*, 625 F.3d at 793, Defendants

24

note that the "Third Circuit has recently stated that courts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision" because "materials that the parties failed to put before the administrator are not usually relevant to the inquiry of whether the administrator abused its discretion". *Id*. Citing *Howley*, *Kosida v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004), *O'Sullivan v. Metro. Life Ins. Co.*, 114 F. Supp. 2d 303, 309 (D.N.J. 2000), *Rhodes v. Principal Fin. Group, Inc.*, 2010 WL 4867618, at *1, 3 (M.D. Pa. 2010), Defendants maintain that "under most circumstances, the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the Plan administrator...and cannot be supplemented during litigation" as "[t]he purpose in limiting the evidentiary scope of judicial review is to encourage the parties to resolve their disputes at the administrator's level" and "work in conjunction with the Third Circuit's exhaustion requirement to ensure a complete record and obviate the need for costly discovery". *Id*. Citing *Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010), Defendants argue that "[e]ven where limited discovery as to conflicts of interest is allowed, such discovery must be circumscribed so as to preserve ERISA's goal of providing an inexpensive and expeditious means of resolving benefit disputes" and that "[t]o the extent allegations concerning conflicts of interest seek to reexamine the merits of that determination", the Third Circuit "will not allow further discovery beyond the administrative record". *Id*. at 16-17.  Defendants point to *Aquilino v. Hartford Life & Acc. Ins. Co.*, 2010 WL 3505172 (E.D. Pa. 2010) by way of example, noting that while "narrowly tailored discovery concerning an alleged conflict of interest is appropriate in the abuse of discretion context", in those instances where the requesting party establishes that he/she "is entitled to discovery beyond the administrative record", a "broad, merits-based evidentiary pursuit is not permitted in the context

25

of arbitrary and capricious review". *Id*. at 17. Here, Defendants argue that Plaintiff "has...not presented a set of narrowly tailored discovery requests" but has, instead, propounded "fifteen identical interrogatories...on each Defendant", served "[t]hirty-six cookie-cutter document requests...on Oracle", served "thirty-five document requests on Sun", and served "thirty-six document requests on the Plan". *Id*. Defendants argue that the discovery requested is "sweeping and broad, encompassing all conceivable areas of inquiry...no matter how tangentially related to Plaintiff's claim". *Id*.

### 3. Even under a *de novo* review, Plaintiff is not entitled to unlimited discovery.

Defendants contend that "[e]ven if the Court were to agree with Plaintiff that the review of his denied claim should be conducted under...[a] *de novo* standard, it does not follow that Plaintiff is entitled to unlimited discovery" as "[s]uch a result would run counter to the ERISA public policy favoring an efficient adjudication of benefits claims". *Id*. at 18. Citing *Luby*, 944 F.2d at 1185 and *Scheider v. Life Insurance Co. of North America*, 820 F. Supp. 191, 193 (D.N.J. 1993), Defendants note that in the Third Circuit, "if the record on review is sufficiently developed, the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision" and thereby make "its own independent benefit determination". *Id*. Here, Defendants maintain that the "administrative record...is very well developed" as Plaintiff "submitted 546 pages of evidence to the LDCC for its consideration on his appeal", the "Plan Administrator...submitted substantial evidence to the LDCC including two declarations detailing her consideration of the claim and addressing Plaintiff's concerns with the claims handling process", and "[d]eclarations from Abramson, Senior Vice President and General Manager, Advanced Customer Services, and Haque,

Vice President, North America, Advanced Customer Services, were submitted to the LDCC challenging the merits of Plaintiff's claim". *Id*. Defendants argue that the "administrative record provides a complete picture of the Plan Administrator and the LDCC's process in considering and reviewing Plaintiff's claim" and includes "substantial evidence...concerning the merits of Plaintiff's claim" such that "there is no need for the Court to look beyond the administrative record...even if...*de novo* is the appropriate standard of review". *Id*. at 18-19. Citing *Viera*, 642 F.3d at 413 and *Met-Life*, 128 S. Ct. at 2350-51, Defendants note that the "role of a reviewing federal court in an ERISA claim for benefits case is to determine whether the administrator made a correct decision...applying the *de novo* standard of review", although nothing "suggests that Congress intended that federal courts would function as substitute Plan Administrators, a role they would inevitably assume if they received and considered evidence not presented to the Plan Administrator concerning a claim for plan benefits". *Id*. at 19. "Adding a second evidentiary process into ERISA's structure would be duplicative of the administrative process and would frustrate ERISA's goal of prompt resolution of claims for benefits by the Plan Administrator". *Id*.

Defendants maintain that the "cases cited by [Plaintiff] do not support his position" that "under a *de novo* review standard[,] a court can occasionally consider some missing evidence outside the administrative record" and therefore "he is entitled to unlimited discovery". *Id*. Further, "all of...[the] cases...[cited by Plaintiff are] distinguishable as they involve the application of a *de novo* standard of review...which is not appropriate here". *Id*. at 20. Specifically, in *Luby* the Third Circuit stated that "[a]dmitting evidence not considered by the plan administrator is [only] crucial in cases...where there is no evidentiary record to review". *Id*. at 19-20; *see also Nave v. Fortis Benefits Ins. Co.*, 1999 WL 672659, at *5 (E.D. Pa. 1999). In *Sussex Auto Center, Inc. v. Optimum Choice,*

*Inc.*, 2001 WL 822329, at *2 (D. Del. 2001), "the court acknowledged that if the record before the Plan Administrator is sufficiently developed then the district court may omit additional evidence" but "did not address the proper scope of discovery" with respect to the admission of additional evidence. *Id.* at 20; *see also Smith v. Continental Casualty Co.*, 2003 WL 105510, at *3 (M.D. Pa. 2003). In *Security Mutual Life Insurance Co. of New York v. Joseph*, 2007 U.S. Dist. LEXIS 47664, at *22-23 (E.D Pa. 2007), the Court "only allowed limited discovery as to alleged conflicts of interest". *Id.* at 21. Finally, in *Bair v. Life Ins. Co. of Am.*, 263 F.R.D. 219, 224 (E.D. Pa. 2009), "the Court only allowed a limited deposition of the appeal claim manager on specific issues relating to conflicts of interests that had been alleged by plaintiff in good faith". *Id.* at 20-21. Oppositely, Defendants argue that despite the fact that "[u]nfettered discovery is not permitted for ERISA cases", Plaintiff "has noticed four unlimited depositions" including "the Plan Administrator, ...the sole member of the LDCC (...also Oracle's General Counsel and the CEO of Sun), Abramson, and counsel for Defendants" in addition to "the deposition of the Plan's person most knowledgeable on the...topic of all documents and information referred to or relied upon in support of Defendants' denials of Plaintiff's [claim and appeal] as well as their defenses to Plaintiff's Amended Complaint". *Id.* at 21.

### 4.    Plaintiff has demonstrated no basis for conflicts discovery.

Citing *Rhodes v. Principal Fin. Group Inc.*, 2010 WL 4867618, at *2 (M.D. Pa. 2010) and *Mainier v. Board of Trustees of Operating Engineer's Local 825 Pension Fund*, 2008 WL 4224924, at *3 (D.N.J. 2008), Defendants contend that "[i]n order to get discovery concerning conflicts of interest, a plaintiff must make a good-faith allegation of a procedural irregularity or bias in the review process that is sufficient to warrant additional discovery". *Id.* at 22. Defendants argue that

Plaintiff's Motion "does not outline a single basis for discovery into potential conflicts of interest" but rather presents "[b]are and conclusory allegations...that the Plan Administrator and/or the LDCC were somehow biased against [Plaintiff] in their consideration of [his] claim". *Id*.  Defendants maintain, however, that "discovery concerning these conclusory allegations is unnecessary...[because] the administrative record already contains evidence sufficient for the Court to evaluate these claims". *Id*.  Specifically, Defendants note that the "Plan Administrator, Baxter, provided a signed declaration directly refuting Plaintiff's allegation that she may have a financial interest in seeing that CIC Severance Claims are frustrated and/or denied" and explained that "Plaintiff's speculation was completely untrue" because "neither the Plan Administrator, nor LDCC member, nor any other Oracle employee's pay, bonus, promotional opportunities or additional consideration of any other kind depend upon the granting or denial of a claim for Plan benefits". *Id*. With respect to "Plaintiff's...allegations that Abramson was biased against him", Defendants note that "Abramson refuted that allegation under oath" and "testified that he does not harbor any ill will or any bias against [Plaintiff]", that he "was impressed by [Plaintiff's] abilities and...was glad to offer him the opportunity to lead ACS for Systems in North America", and that he "would have been glad for [Plaintiff] to accept a job at Oracle whether in [his] organization or in any other". *Id*. at 21-22.  Further, "the Plan's statistics concerning claims granted or denied support this lack of conflict of interest" as the chart included by the Plan Administrator "in the record on appeal to the LDCC" demonstrates that during the same time period, the "Plan Administrator has approved 20 claims...while...denying 23" and the LDCC "has approved three appeals" while denying "twelve". *Id*. at 22.

     **5.**      **Plaintiff has not met his burden of showing that the requested discovery**

**is relevant.**

Citing FED. R. CIV. P. 26(b)(1) and 8 Wright, Miller & Marcus, *Federal Practice and Procedure*: Civil 2d § 2008, Defendants note that the Federal Rules contemplate "broad discovery of any nonprivileged matter that is relevant to any party's claim or defense" but that "good cause" must be demonstrated "[w]here the information sought is merely relevant to the subject matter of the party's claim or defense...[and] is not relevant to the claims or defenses themselves". *Id*. at 23. Citing *Food Lion, Inc. v. UFCW Int'l Union*, 103 F.3d 1007, 1012, 1014 (D.C. Cir. 1997), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978), *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003), *Kinkead v. S.W. Bell Tel. Co.*, 49 F.3d 454, 457 (8th Cir. 1995), *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 813 (7th Cir. 1994), and *Detweiler Bros., Inc. v. John Graham & Co.*, 412 F. Supp. 416, 422 (E.D. Wash. 1976), Defendants maintain that the "standard of relevance...is far from meaningless" because discovery is not unlimited and must be "reasonably calculated to lead to the discovery of admissible evidence". *Id*. Citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) and *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118 (N.D. Ind. 1991), Defendants argue that "Plaintiff has not carried his initial burden of showing that the discovery he seeks is relevant to the claims in the Complaint" and has failed to make "any individualized showing as to the relevancy of each request". *Id*. at 23-24. Citing *Aquilino v. Hartford Life & Acc. Ins. Co.*, 2010 WL 3505172 (E.D. Pa. 2010), Defendants contend that "even if the Court finds that Plaintiff is entitled to some limited discovery, Plaintiff's Motion...must be denied" because "the discovery propounded was not narrowly tailored to a potential conflict of interest". *Id*. at 24.

**6.    Plaintiff is not entitled to depose opposing counsel.**

Citing *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006), *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), and *Pyne v. Procacci Bros. Sales Corp.*, 1997 WL 634370, at *2 (E.D. Pa. 1997), Defendants maintain that "[d]epositions of opposing counsel are presumptively improper", "not encouraged", and "typically permitted only where a clear need is shown" if "(1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information sought is crucial to the preparation of the case". *Id.* Defendants argue that "Plaintiff has not even attempted to meet this high standard", instead claiming that this "extraordinary request" is justified based upon the fact that "Baker drafted the Plan Administrator's summary and that he was present when the LDCC considered Plaintiff's appeal". *Id.* "Neither of these facts demonstrates a 'clear need' to depose Baker", as Baker "has been involved in this case since Plaintiff filed his initial Complaint before initiating the administrative appeal process", "his participation in the appeal process was necessary to provide legal advice to the Plan and to provide the LDCC with the full context of the appeal", and "Baker...[has acted as] outside litigation counsel for Defendants". *Id.* at 25-26.

Citing *Kaiser v. Mutual Life Ins. Co. of New York*, 161 F.R.D. 378, 380, 382 (S.D. Ind. 1994) and *Aamco Transmissions, Inc. v. Baker*, 2008 WL 509220, at *3 (E.D. Pa. 2008), Defendants contend that the "cases cited by Plaintiff do not support his request to depose opposing counsel" because they "deal with the deposition of counsel concerning conduct that took place before the initiation of the litigation at issue" and because "the unique character of counsel depositions requires special attention by the courts". *Id.* at 25. Defendants note that in *Aamco*, the Court acknowledged "three factors as appropriate for consideration in determining whether [a] deposition was appropriate: (1) the extent to which the proposed deposition promises to focus on central factual issues...rather

than peripheral concerns; (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights resulting from the attorney's deposition". *Id*. Defendants argue that "Plaintiff has not put forward any showing that the deposition of Mr. Baker would be appropriate under these three factors". *Id*. "Plaintiff has not identified any potential subject matter for the proposed deposition of Baker where the information sought would not be privileged" and has "not cited any legal argument suggesting that" the "attorney-client or work product privileges would not apply to Baker's work on behalf of Defendants in this case". *Id*. Citing *Aiellos v. Zisa*, 2009 WL 3486301, at *1 (D.N.J. 2009), Defendants argue that "[b]ecause Plaintiff has not raised...[this] argument in his opening brief, the argument is waived". Further, citing *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992) and *Wachtel v. Health Net Inc.*, 482 F.3d 225, 233 (3d Cir. 2007), Defendants maintain that those cases are indistinguishable from this instance because "Baker's role in this case has been to counsel and represent Defendants in the lawsuit filed by Plaintiff" such that Defendants, as "a fiduciary...seeking the advice of counsel for its own personal defense in contemplation of adversarial proceedings against its beneficiaries, retain the attorney-client privilege". *Id*. at 25-26. Finally, Defendants note that "Plaintiff has not addressed the other objections raised by Defendants to the [other] noticed depositions" because "[p]roducing Daley and Abramson for deposition could be extremely burdensome...given their high-level positions at Oracle and at Sun" and "busy schedules attending to top-level key issues". *Id*. at 26. In addition, citing *Farquhar v. Sheldon*, 116 F.R.D. 70, 72 (E.D. Mich. 1987), "each deposition was improperly noticed to take place in New Jersey...where none of the witnesses work or reside". *Id*.

## III.   DISCUSSION

### A.      Legal Standards

#### 1.      ERISA Claims

"To determine the proper standard of review, [courts] begin with the language of the Plan". *Ott v. Litton Industries*, 2005 WL 1215958, at *5 (M.D. Pa. 2005). "The Supreme Court has held that a denial of benefits under ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan". *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 253 (3d Cir. 2004). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, [courts] review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard". *Id.*; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009). "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies". *Id.*; *see also Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999). "Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan" and there "are no 'magic words' determining the scope of judicial review of decisions to deny benefits, and discretionary powers may be granted expressly or implicitly". *Id.*; *see also Luby v. Teamsters Health, Welfare, & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). "To be insulated from *de novo* review, a plan must communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely". *Viera*, 642 F.3d at 417; *see also Diaz v. Prudential Ins.*

33

*Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005). "The administrator's burden to demonstrate insulation from *de novo* review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording". *Id.*; *see also Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 252 (2d Cir. 1999). "Since clear language can be readily drafted and included in policies, even in the context of collectively bargained benefit plans when the parties really intend to subject claim denials to judicial review under a deferential standard, courts should require clear language and decline to search in semantic swamps for arguable grants of discretion". *Id.*; *see also Kinstler*, 181 F.3d at 252. "If...the plan is unclear about where discretion lies, *de novo* review is...appropriate since ambiguities in ERISA plans should be construed in favor of the insured". *Sussex Auto Center, Inc. v. Optimum Choice, Inc.*, 2001 WL 822329, at *2 (D. Del. 2001); *see also Heasley v. Belden & Black, Corp.*, 2 F.3d 1249, 1257-58 (3d Cir. 1993).

If the *de novo* standard of review is exercised, "the role of the court is to determine whether the administrator made a correct decision". *Viera*, 642 F.3d at 413; *see also Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990). "The administrator's decision is accorded no deference or presumption of correctness" and the "court must review the record and determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan". *Id.* at 413-414. In contrast, if the abuse-of-discretion standard of review is exercised, the court "may overturn an administrator's decision only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law". *Id.* at 413; *see also Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011); *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993); *Orvosh v.*

*Program of Group Ins. for Salaried Employees of Volkswagen of America*, 222 F.3d 123, 129 (3d Cir. 2000). "In determining whether an administrator abused its discretion, [the court] must consider any structural conflict of interest as one of several factors". *Id.*; *see also Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir. 2009).

Although many courts operating under a *de novo* standard typically conduct a "review [that] is limited to the record before the administrator...[in order to] determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan" (*Hoover*, 290 F.3d at 809), courts may consider "supplemental evidence" and are "not limited to the evidence before the...administrator" (*Viera*, 642 F.3d at 418; *see also Luby*, 944 F.2d at 1184-85; *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993); *Perry*, 900 F.2d at 966; *Sussex Auto*, 2001 WL 822329, at *2). However, more broadly, "a court's function in exercising *de novo* review is to use all available evidence to determine the empirically correct result, not to defer to [the administrator's] decision". *Sussex Auto*, 2001 WL 822329, at *2. Thus, "[l]imiting the review of an ERISA benefit decision to evidence before the administrator makes little sense when a plan administrator's decision is reviewed *de novo*" such that limiting the scope of discovery "is contrary to the concept of *de novo* review". *Smith v. Continental Cas. Co.*, 2003 WL 105510, at *3 (M.D. Pa. 2003); *see also Luby*, 944 F.2d at 1184. "*De novo* means..., as it ordinarily does, that the court's inquiry is not limited or constricted by the record, nor is any deference due the conclusion under review". *Id.* "Furthermore, district courts sitting in the Third Circuit have acknowledged that new evidence is admissible when applying the *de novo* standard of review and have not limited the admission of such evidence to where there is no evidentiary record". *Id.*; *see also Nave v. Fortis Benefits Ins. Co.*, 1999 WL 672659, at *6 (E.D. Pa. 1999); *Sussex Auto*, 2001 WL 822329, at *2.

"The exception to this rule is that if the record before the Plan Administrator is 'sufficiently developed' then the district court may omit additional evidence". *Sussex Auto*, 2001 WL 822329, at \*2.  Applying the *de novo* standard of review "does not require that a district court conduct a *de novo* evidentiary hearing or full trial *de novo* in making a determination between ERISA claimants". *Luby*, 944 F.2d at 1185; *see also McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 431 (6th Cir. 1989).  Thus "*de novo* review refers both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court".  *Id.*; *see also Perry*, 900 F.2d at 966-67.

## 2. Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".  Courts refuse to order discovery if the information being sought is (1) irrelevant to the claim or (2) protected by a recognized privilege. *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).  The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court.  *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at \*1 (E.D. Pa. 1996).  However, "courts have construed [Rule 26] liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case".  *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *see also Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Oppenheimer Fund,*

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D.

552, 560 (D.N.J. 1994); *Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375

(D.N.J. 1981).  "Review of all relevant evidence provides each party with a fair opportunity to

present an effective case at trial".  *Id.*; *see also Caver*, 192 F.R.D. at 159.  "Mutual knowledge of all

the relevant facts gathered by both parties is essential to proper litigation...[and] either party may

compel the other to disgorge whatever facts he has in his possession".  *Hickman v. Taylor*, 329 U.S.

495, 507 (1947).  "Whether certain documents are relevant is viewed in light of the allegations of

the complaint, not as to evidentiary admissibility".  *Id.*; *see also Scouler v. Craig*, 116 F.R.D. 494,

496 (D.N.J. 1987).  Importantly, "the party resisting discovery has the burden of clarifying and

explaining its objections to provide support therefor".  *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf*

*Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83

F.R.D. 79, 85 (E.D. Pa. 1979).

### 3.      Deposition of Counsel

"While depositions of opposing counsel can be troublesome, there is nothing in the Rules

which precludes them" and "FED. R. CIV. P. 30(a) clearly states that 'a party may, by oral questions,

depose any person'".  *Aamco Transmissions, Inc. v. Baker*, 2008 WL 509220, at *3 (E.D. Pa. 2008).

"In considering whether the deposition of opposing counsel should go forward, [the] Court...[has]

identified three factors to take into account: (1) the extent to which the proposed deposition promises

to focus on central factual issues...rather than peripheral concerns; (2) the availability of the

information from other sources...with an eye toward avoiding cumulative or duplicative discovery;

and (3) the harm to the party's representational rights resulting from the attorney's deposition".  *Id.*;

*see also Frazier v. Southeastern Pennsylvania Transportation Authority*, 161 F.R.D. 309, 313 (E.D.

Pa. 1995). "[D]epositions of opposing counsel are permissible only if: (1) no other means exist to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information sought is crucial to the preparation of the case". *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006); *see also Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). "[A] deposition of opposing counsel is not encouraged and is typically permitted only where a clear need is shown" but "[is] permitted...where an attorney takes part in significant relevant pre-litigation events and the attorney-client privilege does not apply to the testimony". *Id.*; *see also Pyne v. Procacci Bros. Sales Corp.*, 1997 U.S. Dist. LEXIS 15672, at *5 (E.D. Pa. 1997); *see also Shelton*, 805 F.2d at 1327. "Absent an attorney's advice being made an issue in the case, courts should exercise great care before permitting the deposition of an attorney". *Id.*; *see also Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D. Kan. 1994); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987).

However, "[u]nder ERISA, an employer may perform both fiduciary functions and non-fiduciary functions", "act[ing] as an ERISA fiduciary only in plan management or administration, not in the plan's design". *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997); *see also Siskind v. Sperry Retirement Program*, 47 F.3d 489, 505 (2d Cir. 1995); *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1524-25, n.33 (5th Cir. 1994); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1161 (3d Cir. 1990); *Engers v. AT&T*, 2004 WL 5902865, at *2 (D.N.J. 2004). "The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries". *Id.* "An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan" and "[a]s part

38

of this obligation, the ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan". *Id.* at 271-72; *see also Martin v. Valley National Bank*, 140 F.R.D. 291, 322 (S.D.N.Y. 1991). "An ERISA fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries" and "[t]hus, an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration" pursuant to "the 'fiduciary exception' to the attorney-client privilege". *Id.*; *see also United States v. Mett*, 178 F.3d 1058, 1063-64 (9th Cir. 1999).

The Court notes, however, that "[o]n the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend against the plan beneficiaries..., the attorney-client privilege remains intact". *United States v. Mett*, 178 F.3d at 1064-66. Thus, "while the fiduciary exception does apply to advice on matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect herself from civil or criminal liability". *Id.* at 1066. In *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992), the Court found "that there had never been a mutuality of interest that would create a fiduciary relationship between [defendant's] trial counsel...and the plan beneficiaries because all of [defendant's trial counsel's] communications with the plan administrator were made for the purpose of defending the pending lawsuit and did not deal with plan administration". In addition, the Court found that "after [a] [law]suit [is] filed[,] the mutuality of interests between...[plaintiff] and [defendant's in-house counsel], which is a prerequisite to the existence of the fiduciary exception to the attorney/client privilege, ceased to exist" because "the

interests of the administrator, the remaining beneficiaries, and the plan itself, and the interests of the plan-beneficiaries diverged at that point".   *Wildbur*, 974 F.2d at 645.

### 4.    Rule 37

Pursuant to Fed. R. Civ. P. 37(a)(5),

> Payment of Expenses; Protective Orders.
>
>> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>>
>>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>>
>>> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>>
>>> (iii) other circumstances make an award of expenses unjust.
>>
>> (B) If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.
>>
>> (C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in

part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

**B.     Plaintiff's Motion**

Initially, the Court notes that the parties agree that a Change of Control did occur prior to Plaintiff's resignation and the submission of his claim for benefits under the Plan.  Here, the Court finds that the Plan was – at best – inartfully drafted based on the dichotomy that appears to exist between Section VIII and Section IX with respect to amendments to the Plan prior to and after a Change of Control (*see* dkt. entry no. 38-1, Section VIII at 8.1-8.2) and with respect to the standard of review to be accorded to Plan interpretation(s) made by the Employer after a Change of Control (*see* dkt. entry no. 38-1, Section IX at 9.1) versus the standard of review accorded to decisions made by the LDCC on appeal (*see* dkt. entry no. 38-1, Section IX at 9.2(d)(v)).  Given that "the Plan may be terminated or amended in any respect by resolution adopted by two-thirds of the Board...unless a Change of Control has previously occurred" (*Id.*, Section VIII at 8.1-8.2) and given that "the Employer shall have discretionary authority to construe and interpret the terms of the Plan, to determine eligibility and to make all other determinations under the Plan" prior to a Change of Control (*Id.*, Section IX at 9.1), it is clear to the Court that prior to a Change of Control "the [Plan] administrator not only ha[d] broad-ranging authority to assess compliance with pre-existing criteria, but also ha[d] the power to interpret the rules, to implement the rules, and even to change them entirely" (*Viera*, 642 F.3d at 417), and, therefore, that an abuse of discretion standard of review would apply to any review by this Court of determinations made prior to a Change of Control (*Id.* at 413).  Separately, however, given that "the Plan no longer shall be subject to amendment, change, substitution, deletion, revocation or termination" if "a Change of Control occurs" until "after all

41

Participants who become entitled to Severance Payments hereunder shall have received such payments in full" (*see* dkt. entry no. 38-1, Section VIII at 8.1-8.2), that "the Employer shall not have discretionary authority to construe and interpret the Plan" after a Change of Control (*Id.*, Section IX at 9.1), that "any decision of the Employer with respect to the Plan...[on or after the date of a Change of Control] shall be subject to *de novo* review if and when such decisions are reviewed by a court or in arbitration" (*Id.*), and that "decision[s] of the LDCC on...appeal shall be final, conclusive and binding upon all persons and shall be given the maximum possible deference allowed by law" (*Id.*, Section IX at 9.2(d)(v)), it is clear to the Court that on or after the date of a Change of Control, the Plan no longer confers "broad-ranging authority to assess compliance with pre-existing criteria" or complete "power to interpret the rules, to implement the rules, and even to change them entirely" (*Viera*, 642 F.3d at 417) on the Employer, the Plan Administrator, and/or the LDCC, and, therefore, that a *de novo* standard of review applies to any review by this Court under the circumstances.  The Court finds that Defendants have failed to meet their "burden of proving that the arbitrary and capricious standard of review applies" (*Id.* at 413).

More specifically, the Court finds that Defendants' argument that one standard of review applies to decisions made by the Employer while another standard of review applies to decisions made by the LDCC – and reliance, in part, on Section X of the Plan – ignores the requirement that a beneficiary must file an internal appeal prior to instituting any legal or equitable action.  *See* dkt. entry no. 38-1, Section IX at 9.2(e).  Consequently, under Defendants' interpretation of the Plan's language, no beneficiary would ever be entitled to a *de novo* review by the Court unless the Employer failed to comply with the terms of the administrative review process (*e.g.*, failing to act on a claim within the time prescribed in Section 9.2(b) or Section 9.2(d)) in which case, the law imposes a *de novo* standard of review.  *See* dkt. entry no. 38-1, Section IX at 9.2(b); *see also id.*,

Section IX at 9.2(d).  A beneficiary whose claim was denied by the Plan Administrator is foreclosed from bringing legal or equitable action for benefits under the Plan until such time as he has "filed a written request of the claim" and has been "notified in writing that the LDCC has affirmed the denial of the claim".  *Id*.  So in the first instance under Defendants' interpretation, Plaintiff is prohibited from obtaining any review by the Court until he has exhausted his administrative remedies.  If a beneficiary does file an internal appeal after his claim is denied by the Plan Administrator, according to the Plan, "LDCC decisions are to have final, conclusive and binding effect upon all persons".  *See* Def.'s Opp'n Br. at 12-13.  So in the second instance, under Defendants' interpretation, in the event that the LDCC upholds the Plan Administrator's denial of benefits, Plaintiff's legal and equitable action for benefits is limited to an abuse-of-discretion standard of review by the Court even after a Change of Control.  As set forth above, the Court does not equate the actual authority granted to the LDCC – that its review may "take into account all comments, documents, records and other information submitted...relating to the claim...without regarding to whether such information was submitted or considered in the initial benefit determination", that it "shall not be restricted in...[its] review to those provisions of the Plan cited in the original denial of the claim", and that its decisions "shall be final, conclusive and binding upon all persons and shall be given the maximum possible deference allowed by law" – with a grant of discretionary authority to construe and interpret the Plan's terms.  *See* dkt. entry no. 38-1, Section IX at 9.2(d)(i-v).  Based on Defendants' acknowledgment that Sun "had discretionary authority to construe and interpret the terms of the Plan" before "Oracle's acquisition of Sun" and that such authority was "revoked" after a Change of Control so that "any decisions made by...[Oracle] regarding the Plan...[would] be subject to *de novo* review", the Court finds that Sun knew how to draft Plan provisions that expressly granted discretionary authority to construe and interpret the Plan

43

and that, if it wanted to confer such discretion after a Change of Control, Sun knew how to do so. *See* Def.'s Opp'n Br. at 15.

At best, "the plan is unclear about where discretion lies" after a Change of Control (*Sussex Auto*, 2001 WL 822329, at *2), and, therefore, a "*de novo* review is appropriate [after a Change of Control] since ambiguities in ERISA plans should be construed in favor of the insured" (*Id*.). Although the LDCC may have the authority to "take into account all comments, documents, records and other information...relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination" (*see* dkt. entry no. 38-1, Section IX at 9.2(d)(ii)) and is "not...restricted in...[its] review to those provisions of the Plan cited in the original denial of the claim" (*Id*.), after a Change of Control, based on the language of the Plan itself and relevant case law, the Court concludes that "the maximum possible deference allowed by law" to the LDCC's decisions (*Id*., Section IX at 9.2(d)(v)) is a *de novo* standard of review.  Given that "clear language can be readily drafted and included in policies" (*Viera*, 642 F.3d at 417), the Court "decline[s] to search in semantic swamps for arguable grants of discretion" and, therefore, finds that the appropriate standard of review in this case is *de novo* (*Id*.).

The Court notes that under the *de novo* standard of review, "the role of the court is to determine whether the administrator made a correct decision" and that courts typically conduct "a review [that] is limited to the record before the administrator", although "[in order] to determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan" (*Hoover*, 290 F.3d at 809), courts may consider "supplemental evidence" and "are not limited to the evidence before the...administrator" (*Viera*, 642 F.3d at 418; *see also Luby*, 944 F.2d at 1184-85; *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993); *Perry*, 900 F.2d at 966; *Sussex Auto*, 2001 WL 822329, at *2).  Here, the Court finds that

44

although a substantial record was developed before the Plan Administrator and the LDCC, Plaintiff has alleged and sufficiently supported his argument that there was additional evidence which was considered but not disclosed, as well as evidence which was available but not considered, to create issues as to the adequacy, accuracy, and development of the record below. *See, e.g.*, Pl.'s Reply Br., dkt. entry no. 45 at 5-7. Without the opportunity to engage in discovery related to these issues, Plaintiff will be unable to substantiate his allegations, the Court will be unable to determine whether additional information should be considered together with the administrative record, and, as a result, the Court will be unable "to use all available evidence to determine the empirically correct result...[rather than] defer to the administrator's decision". *Sussex Auto*, 2001 WL 822329, at *2. Although the Court acknowledges that applying the *de novo* standard of review "does not require...a *de novo* evidentiary hearing or full trial *de novo* in making a determination" (*Luby*, 944 F.2d at 1185), the Court finds that the record before the Plan Administrator and/or LDCC may not have been fully developed and, therefore, that Plaintiff's general request to engage in discovery is appropriate (*see Sussex Auto*, 2001 WL 822329, at *2). At a minimum, the Court finds that Plaintiff is entitled to a complete record demonstrating what information was and was not considered in connection with the denial of his claims.

Having reviewed Plaintiff's Second Set of Interrogatories (*see* Pl.'s Cert. of MacLean at Ex. A), the Court finds that these discovery requests generally seek relevant information and/or are reasonably calculated to lead to the discovery of admissible evidence (*see* Fed. R. Civ. P. 26(b)(1)) given the "broad range for discovery" (*Jones*, 238 F.R.D. at 163), given that "[w]hether certain documents are relevant is viewed in light of the allegations of the complaint...[rather than] as to evidentiary admissibility" (*Hickman*, 329 U.S. at 507), and given that "the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor" (*Tele-Radio*,

45

92 F.R.D. at 375).   Having reviewed Defendants' responses to Plaintiff's Second Set of Interrogatories (*see* Pl.'s Cert. of MacLean at Ex. C), in light of the Court's determinations here the Court finds same to be insufficient and recommends that Defendants be directed to amend or supplement their previous responses/objections within thirty (30) days.   Pursuant to FED. R. CIV. P. 26(b)(5) and L. CIV. R. 34.1, the Court recommends that Defendants be directed to create and serve a privilege log with respect to any materials they claim are privileged within thirty (30) days. Thereafter, the Court recommends that counsel be directed to meet and confer pursuant to L. CIV. R. 37.1 regarding any claimed discovery deficiencies and to promptly bring all remaining issues to the Court's attention by letter outlining any unresolved dispute(s).

Having reviewed Plaintiff's Second Set of Document Requests (*see* Pl.'s Cert. of MacLean at Ex. A), and reiterating the Court's recommendation that Plaintiff is only entitled to discover additional evidence which was considered by the Plan Administrator and LDCC but not disclosed to Plaintiff as well as evidence which was available but not considered by the Plan Administrator and LDCC, the Court finds that Plaintiff's document requests are generally overbroad and/or overreaching given that many courts operating under a *de novo* standard typically conduct "a review [that] is limited to the record before the administrator" (*Hoover*, 290 F.3d at 809).   Having reviewed Defendants' responses to Plaintiff's Second Set of Document Requests (*see* Pl.'s Cert. of MacLean at Ex. C), the Court makes no finding at this time as to their sufficiency.   Rather, the Court recommends that the parties be directed be directed to meet and confer pursuant to L. CIV. R. 37.1 within thirty (30) days regarding any claimed discovery deficiencies and to promptly bring any remaining issues to the Court's attention by letter outlining any unresolved dispute(s).   Pursuant to FED. R. CIV. P. 26(b)(5) and L. CIV. R. 34.1, the Court recommends that Defendants be directed to create and serve a privilege log with respect to any materials they claim are privileged within thirty

(30) days.

Having reviewed Plaintiff's Notices to Take Oral Deposition of Baxter, Abramson, Daley, Baker, and a 30(b)(6) corporate representative (*Id.* at Ex. A) and Defendants' responses thereto (*Id.* at Ex. C), the Court finds that deposition of these individuals is within the scope of FED. R. CIV. P. 30 and relevant pursuant to FED. R. CIV. P. 26(b)(1).   The Court recommends that counsel be directed to meet and confer within forty-five (45) days pursuant to L. CIV. R. 37.1 regarding procedural issues related to all of the noticed depositions – including, but not limited to logistics, scheduling, etc. – and thereafter the Court recommends that Defendants be directed to produce Baxter, Abramson, Daley, and a 30(b)(6) corporate representative for deposition within sixty (60) days.  Separately, with respect to the deposition of Baker, the Court recommends that counsel be directed to meet and confer pursuant to L. CIV. R. 37.1 within forty-five (45) days regarding substantive issues – including, but not limited to, deposition subject matter, applicable privilege(s), etc. – and recommends that Plaintiff be given leave to raise the issue of Baker's deposition after Baxter, Abramson, Daley, and a 30(b)(6) corporate representative have been deposed.

Finally, with respect to Plaintiff's request for attorneys' fees and costs, the Court finds that Defendants' objections and responses related to this Motion were made in good faith and therefore recommends that Plaintiff's application in this regard be **DENIED**.

## IV.    CONCLUSION

For the reasons stated above, it is recommended that Plaintiff's Motion to compel discovery [dkt. entry no. 41] be granted except as to Plaintiff's request for attorneys' fees and costs, that the Court adopt a *de novo* standard of review related to Plaintiff's Complaint, that Defendants be required to amend or supplement their previous responses/objections to Plaintiff's Second Set of Interrogatories within thirty (30) days, that counsel meet and confer pursuant to L. CIV. R. 37.1 with

respect to Plaintiff's Second of Discovery Requests within thirty (30) days, that defense counsel create and serve a privilege log with respect to any materials Defendants claims are privileged pursuant to FED. R. CIV. P. 26(b)(5) and L. CIV. R. 34.1, that counsel meet and confer pursuant to L. CIV. R. 37.1 with respect to the depositions noticed by Plaintiff within forty-five (45) days, and that Defendants produce Baxter, Abramson, Daley, and a 30(b)(6) corporate representative for deposition within sixty (60) days.

L. CIV. R. 72.1 and FED. R. CIV. P. 72 permit objections to this Report and Recommendation to be filed within fourteen (14) days after service hereof.  Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  The Clerk of Court is directed to serve the parties with electronic notice upon filing this Report and Recommendation.

Respectfully submitted,

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**

**DATED: December 9, 2011**

48